## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNTIED STATES,** | ) | **CASE NO. 1:07CR647** |
| | ) | |
| **Plaintiff** | ) | **JUDGE JAMES CARR** |
| | ) | |
| -vs- | ) | |
| | ) | **DEFENDANT ZUBAIR** |
| **ZUBAIR AHMED, et al.,** | ) | **AHMED'S MEMORANDUM** |
| | ) | **IN AID OF SENTENCING** |
| **Defendants** | ) | |

**I.  INTRODUCTION**

Now comes Defendant Zubair Ahmed, through the undersigned counsel, to submit this Memorandum in Aid of Sentencing[1] and respectfully requests that this Court impose a sentence of 100 months.  Such a sentence is "sufficient, but not greater than necessary" to provide just punishment, adequate deterrence, protect the public and provide necessary rehabilitation, the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a) and United States v. Booker, 125 S. Ct. 738 (2005).  As this Court is aware, the plea agreement entered into by Zubair is governed by Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  Therefore, the Court has discretion within a range of 100 to 125 months to sentence Zubair.  For the reasons outlined in this Memorandum, Zubair respectfully requests that this Court impose a sentence of 100 months.

---

1  With the Court's permission, Zubair seeks to file a supplement to this Memorandum under seal.

## II.     BACKGROUND

Zubair Asif Ahmed was born in the Chicago, Illinois on April 27, 1979. He grew up in Chicago to parents of Pakistani and Indian descent as a normal American teenager. See letters attached hereto as Exhibit 1. Mohammed Ahmed, 55, is from India and Farhat Ali Ahmed, 50, is from Pakistan. PSR, ¶ 99-100. Both of his parents are naturalized citizens. Id. at ¶ 100. He is the oldest of three children born to his parents. He has two sisters. Id. at ¶ 99. Mrs. Ahmed does not work outside the home and has devoted her life to raising her children. Id. at ¶ 100. Mr. Mohammed Ahmed is self-employed with a degree in accounting from Northeastern University, which he attained while working two jobs. Id. at ¶ 101. After working as an accountant for West Suburban Hospital in Chicago for over 20 years, Mr. Ahmed left the hospital job and has since begun his own business, Midwest Oil. Id.

Zubair and his family have always valued education and he continued to work towards an advanced degree until just before he self surrendered on January 14, 2010. Zubair graduated from St. Patrick High School in Chicago, on May 27, 1997. Id. at ¶ 114. After graduation, Zubair pursued a variety of fields of interest at several different universities. Id. at ¶ 115. He attended Ashford University's on-line program out of Clinton, Iowa. Id. at ¶ 115. He then attended Wilbur Wright College in Chicago, Illinois and Rosalind Franklin University of Medicine and Science. Id. at ¶ 116-117. At Rosalind, Mr. Zubair was in the Medical Technology program. Id. Zubair also took courses at the University of Illinois in Chicago and Oakland University, Rochester, Michigan. Id. at ¶ 118-119. Recently, Zubair has acquired 12 credit hours in an on-line Masters of Business

Administration program through Touro University International. Id. at ¶ 120.  Much of Zubair's education has been focused on anaerobic composting and waste management or physical therapy.

Previous to the indictments in the instant and original case, Zubair was employed.  Most recently he was employed by HADI Group Distributors; a gas station in Dearborn, Michigan while attending Oakland University; and on a temporary basis at Parkway Bank & Trust Company. Id. at ¶ 123-125.  Zubair has also worked for his father's company; as a pharmacy technician during and after high school; and as a pizza delivery person. Id. at ¶ 126.

Zubair's two sisters are Yasmeen Ahmed, age 24, and Sana Ahmed, age 19. Id. at ¶ 102-103.  Yasmeen is a medical student attending the Jessenius School of Medicine in Martin, Slovkia.  She plans to practice medicine in the United States. Id. at ¶ 102.  Sana is currently a student at Wright Junior College in Chicago, Illinois and employed part-time as a retail salesperson. Id. at ¶ 103.  The siblings are and have always been close.  Zubair bought his sister Sana a dollhouse with his very first paycheck.  His support of his sister Yasmeen's dream of becoming a doctor led to his initial meeting with the El-Hindi brothers.

As this Court is aware from his family's constant presence at hearings and the attached letters, Zubair has a good relationship with his family.  Those who have known him best have written letters and remark on his devotion to family and kindness to those around him.  As noted in the PSR, he describes his relationship with his parents as "really swell." Id. at ¶ 104.  Zubair is currently focused on completing his sentence, putting this behind his family and gaining whatever additional schooling and training he may attain while incarcerated.

Finally, Zubair has no history of criminal convictions either as an adult or juvenile. Prior to the activities in this case, Zubair was a typical American teenager, concerned with his family, school and his future.

### III. PLEA AGREEMENT

Zubair entered into his plea agreement with the Government pursuant to Rule 11(c)(1)(c) of the Federal Criminal Rules of Procedure. The plea incorporates a sentence between 100 and 125 months, based on a stipulated offense level of 24 under the U.S. Sentencing Guidelines. Further, pursuant to the plea, the Government agrees not to object to Zubair's request to the Court for a recommendation that he be assigned to a suitable Bureau of Prisons (BOP) facility nearest to Chicago. While Zubair understands that the discretion as to where he is housed lies with the BOP, he respectfully requests that this Court recommend that he be placed at FCI Oxford in Oxford, Wisconsin, a medium security facility. FCI Oxford is conveniently located for his family and provides Zubair with an ample amount of educational and vocational training opportunities during his incarceration.

### IV. CONDUCT UNDERLYING PLEA AGREEMENT

Zubair Ahmed has always been active in his mosque. He discussed his religion and political views with many individuals from the time he was a young child. During the first war in Afghanistan, when the United States encouraged Muslims to fight against the invading Russians, Zubair was just a child but he began to form beliefs as to his religious obligations. When his cousin Khaleel arrived in the United States, the cousins engaged in the same types of conversations regarding religion and politics over a period of several years. Sometimes they exchanged articles and videos from conflicts around the world involving Muslims. Zubair was particularly interested in

Chechnya. Eventually these conversations turned to discussions about whether their religion called them to action. They decided that it did.

Thereafter, in 2004, the Ahmed cousins had interactions with a Canadian woman named Beverly. Zubair did some translating for her website. Beverly was planning to make a documentary in Pakistan and the two decided to join her. Once overseas with her, the two planned to separate and somehow fight in Afghanistan or Iraq. Zubair brought his Playstation. Upon their arrival in Egypt, the cousins spent some time with Beverly and shopped, visited a famous mosque, and exercised. They quickly realized that they were not going to get anywhere and abandoned their nebulous "plan" to fight in the war. They put up no resistance when Zubair's father, Mohammed, arrived in Egypt to bring the boys home.

The rest of the conduct of which Zubair is guilty was conducted from his home in Chicago and a brief trip to Cleveland. It did not involve making any plans and, more often than not, ended with Zubair simply choosing to focus on his education and family. After Zubair returned from Egypt, Zubair's family decided that his sister would go to a medical school abroad that was associated with Mr. El-Hindi's brother. In order to subsidize some of the fees, the Ahmed cousins went with Mr. El-Hindi to the Islamic Circle of North America ("ICNA") conference in Cleveland. This is a mainstream Muslim organization. At the conference, Mr. El-Hindi introduced the Ahmed cousins to Darren Griffin, "the Trainer." Upon meeting him, they spoke for approximately 15 minutes at the booth recruiting medical students, which was the purpose for the trip. The Ahmed cousins asked about guns and military subjects. That was the one and only time Zubair met the Trainer. After that, there was some discussion about the Trainer coming to Chicago but both Ahmed

5

cousins avoided making any plans and eventually ignored the Trainer's requests to meet. That is the end of Zubair's involvement with any of the original three defendants.

The only other conduct in which Zubair engaged was conversations with Mr. Syed Harris Ahmed in Atlanta, Georgia. These conversations were primarily over the phone and online and never amounted to making any plans. Their conversations were similar to those of the Ahmed cousins and would sometimes go to religion and whether there was a religious obligation to engage in Jihad. They discussed a desire to fight in the wars but never made it beyond that point. They also discussed school, Zubair's fiancé and many other topics. Mr. Haris Ahmed urged Zubair to travel to Georgia to make solid plans and begin training. Zubair never availed himself of that opportunity and continually put off Mr. Haris Ahmed's requests. Mr. Haris Ahmed traveled around the United States and Canada and became involved in more serious planning, of which Zubair was not a part.

The conduct to which Zubair pled guilty is contained in the plea agreement. Because the PSR contains many accusations that were not included in the plea agreement, it is important to focus on the language in the plea agreement. This is the only conduct to which Zubair has pled guilty. The plea states that Zubair engaged in the following conduct:

> i. At a date unknown, but no later than April 1, 2004, the Defendant and others, including Khaleel Ahmed, made preparations to travel overseas in order to engage in acts which would result in the murder or maiming of U.S. military forces in either Iraq or Afghanistan;
>
> ii. On or about May 21, 2004, the Defendant and others, including Khaleel Ahmed, did in fact travel to Cairo, Egypt with the intent of engaging in acts which would result in the murder or maiming of U.S. military forces in Iraq or Afghanistan;
>
> iii. On or about July 4, 2004, the Defendant discussed, sought, and received instruction from another individual in Cleveland, Ohio on the topics of firearms, explosives, counter-surveillance techniques, and sniper rifles. Specifically, the Defendant discussed his desire to learn how to use and move with a .50 caliber machine gun.

 iv. From a date unknown, but no later than September 1, 2002, the Defendant and others, including Khaleel Ahmed, communicated using codewords and spoke in a foreign language in order to disguise their preparations and plans to engage in acts outside the United States which would result in the murder or maiming of U.S. military forces in Iraq and Afghanistan;

 v. From a date unknown, but no later than July 4, 2004, the Defendant and others, including Khaleel Ahmed, researched the purchase of firearms, methods of obtaining firearms instruction (including at least one visit to a firing range), and methods of obtaining instruction in gunsmithing.

 vi. From a date unknown, but no later than July 4, 2004, the Defendant and others, including Khaleel Ahmed, acquired, collected, and distributed materials, including videos of attacks on U.S. military forces in Iraq and Afghanistan, manuals on military tactics, and military manuals on weaponry.

 There are other factors that must be taken into consideration when reviewing the facts alleged in the PSR. First, the PSR states that "[i]t is a local practice as well as a policy of the Administrative Office of the United States Courts to include a detailed summary of the charging instrument in the Charge(s) and Conviction(s) section of the presentence report." PSR, p. 25. However, it is clear that the incorrect charging instrument was used here. The instrument to which Zubair pled guilty is the Superseding Information filed on January 15, 2009. Docket No. 129. The PSR refers to conduct contained in an indictment that was dismissed. The PSR also indicates that "[a] portion of the proffered statements were also reviewed." PSR, p. 12. The proffer letters that Zubair signed did not indicate that information provided during a proffer could be used at sentencing. To the extent that the PSR relies on any statements in the proffers, that should be disregarded.

 As well as including conduct irrelevant to the charges to which Zubair pled guilty, the PSR contains misleading and false information. Zubair objected to the statements but some of those objections bear further discussion here. They are:

Paragraph 8: Zubair's purchase of a firearm had nothing to do with training for Jihad. In fact, at that point Zubair had already spoken to representatives of the Government and told them that he purchased a gun. The involvement with firearms was not related to this case and should not be included. Zubair believed he was granted permission to buy a gun by one of the agents because it was not a crime and he was doing so in a legal manner with the knowledge of his lawyer. Additionally, he made no attempts to hide the fact that he purchased a gun and did so with the proper license required in Illinois and in his own name.

Paragraph 9. The physical training and use of dietary supplements was not exclusively geared toward engaging in Jihad. Zubair has been involved in body building and weight training for many years. As a child he studied martial arts. While he may have referred to needing to be in shape to fight in a war, these activities began long before any discussions of traveling abroad or Jihad.

Paragraph 10. Zubair visited the shooting ranges with friends for recreational purposes, not for Jihad. He went on two occasions. The first was after classes and included several classmates including an individual in the military.

Paragraph 11. Zubair has many goals in his life, including marriage, family, and charitable interests. He also had interests in business and entrepreneurship for which he studied in college. Since he began cooperating with the Government, he has continued those goals and earned credits towards an MBA.

Paragraph 18. Zubair's interest in anaerobic composting and waste management was not just a "cover story." He continues to be interested in this field and continues to study its potential as a source of income once he is released.

Paragraph 22. As noted above, there were no specific arrangements to meet the trainer for further discussions. In fact, Zubair ignored the Trainer's requests and focused on his education and family.

Paragraphs 37, 38, 39 and 40. Zubair's conversations with Mr. Haris Ahmed were varied. They discussed their families, their lives, schooling and desire for girlfriends.

Paragraph 45. The only individual Zubair met at the convention in Cleveland who was part of the original conspiracy was Marwan El Hindi. He had no knowledge or contact with the other two or any of the other individuals listed in the related cases section of the PSR. This is excluding Mr. El-Hindi's brother with whom Zubair interacted when his sister chose to go to medical school.

The discussion of the conduct is not included to minimize Zubair's plea or behavior. He clearly recognizes the serious nature of his crime and is prepared to spend what is a significant

8

amount of his young life in prison for these crimes. However, this Court is urged to solely look at Zubair's actions and not additional supposition provided by the Government or the PSR.

## V. ADDITIONAL CASES FOR CONSIDERATION

### A. Co-Defendant Khaleel Ahmed's Sentence

Any consideration of Zubair's role as it relates to that of his cousin and co-defendant Khaleel Ahmed has been more than adequately addressed in the differing ranges the two are subject to in the plea agreements. Khaleel's plea calls for a range of 92 to 115 months, based on a Guideline range of 23. Zubair Ahmed must be sentenced to a term of imprisonment between 100 and 125 months, based on a Guideline range of 24. The sole reason for the differing ranges is that Zubair's plea agreement includes an enhancement based on his role as a leader in the offense.

The Government concluded that the leadership enhancement was necessary because it believed Zubair was more involved in planning the trip to Egypt than his cousin. It is undisputed that both cousins were equally interested in the journey and its purpose. The additional level for being a leader is sufficient to punish Zubair for any increased role. Further, the higher range for his sentence weighs in favor of selecting a sentence at the lower end of the range and the conduct of the cousins was not so dissimilar. Zubair respectfully urges this Court not to consider Zubair's role in the offense when determining his sentence.

### B. United States v. Amawi, et al., Case No. 06CR00719

Zubair's charges were originally part of United States v. Amawi, et al., Case No. 06CR00719. The three original defendants, Messrs Amawi, El-Hindi and Mazloum, were indicted in February 2006. The Ahmed cousins were referenced in the original indictment as "training recruits in Chicago." February 16, 2006 Indictment, p. 5, Docket No. 186. Conversations with the

9

trainer were included as well. Id. Thereafter, the Ahmeds were charged in a superseding indictment in April 2007 and separated from the original case. The original defendants were convicted of crimes that could potentially carry life sentences. They alone were aware of the other individuals in the conspiracy. The Ahmed cousins never met or knew of anyone outside of Mr. El-Hindi and the Trainer.

Mr. Amawi received a sentence of 20 years, Mr. El-Hindi received 12 years and Mr. Mazloum received 100 months, the sentence that Zubair seeks. Each of the defendants is subject to a life term of supervised release. Mr. Mazloum was convicted of conspiracy to kill, kidnap, maim or injure persons outside the United States and conspiracy to provide material support to terrorists.

Mr. Mazloum was extremely eager to receive training and, contrary to Zubair, implored the Trainer to accelerate the training and expressed great interest in learning how to construct Improvised Explosive Devices. Mr. Mazloum learned how to train additional recruits in handgun marksmanship in Arabic. Mr. Mazloum followed up with the Trainer to see if he had made contacts overseas and had frequent telephone communication with Messrs Amawi and El-Hindi. The video of the February 16, 2005 meeting at Mr. El-Hindi's home demonstrated, as this Court described, that Mr. Mazloum participated in the meeting and agreed with the objectives of "recruiting others, maintaining security, initially acquiring small arms training, creating a 'cell,' the need for money, manpower and weapons in Iraq, and…'to know explosives these days' as the best way for 'making damage.'" Order, May 15, 2009, Case No. 06CR00719, Docket No. 948, pp. 4-5. Additionally, Mr. Mazloum involved his brother in a firearms training session with the Trainer.

The sentence urged by Zubair is that which Mr. Mazloum received. While Zubair traveled to Egypt, he did not take any steps towards creating a terrorist "cell" like Mr. Mazloum, nor did a jury

10

n
n
n

convict him of such a serious crime. Further, he pled guilty, accepted responsibility for his crime and extensively cooperated with the government. In light of these important differences, a 100-month sentence is more than appropriate.

Additionally, the PSR lists seven others as related cases, including the original defendants. It is important to note that Zubair had contact with only two of those listed and was not aware of the existence of the others. Further, although Zubair had met Marwan Othman El-Hindi, it was not in the context of any illegal conduct. He first met him, and his brother, in relationship to the medical school his sister attends. He again met him when his father came to Egypt to take him home. There has been no allegation that he conspired with Marwan Othman El-Hindi to engage in any illegal behavior.

### C. Other Terrorism Related Cases

Sentences are often driven by the actual conduct underlying the offense of conviction. It is the conduct of Zubair that this Court is urged to examine. This is not a so-called "home grown terrorist" case where the defendant seeks to do harm to civilians. Zubair has been unwavering in his statements that he would not consider committing any act of violence in the United States or against civilians. His desire was to fight in the wars in Afghanistan and Iraq. While that is clearly a violation of law to which Zubair has pled guilty, it is not of the same nature as many cases in today's media.

Further, Zubair had absolutely no association with any terrorist organization. In fact, there really was no plan at all in terms of how they were going to become involved in the war. They had engaged in no training or secured any contacts within Afghanistan, Iraq or Pakistan. This visibly takes Zubair's case out of the heartland of terrorism related cases.

11

## VI. SENTENCE

### A. Zubair Ahmed Should Receive 100 Months Of Imprisonment

Although the Court is constrained to a sentence between 100 and 125 months, the factors in 18 U.S.C. § 3553 are still relevant. Those are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed:
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence . . . ;
    (C) to protect the public . . . ; and
    (D) to provide defendant with needed educational, or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
(5) any pertinent policy statement issued by the Sentencing Commission . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*i. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

As is clear from above and the attached letters, Zubair's history and family support militate towards a sentence at the low end of the range. He has no criminal history and lived a normal life as an American teenager until the conduct underlying these charges.

As this Court can see from the letters, the Ahmed family is close. It is the strength of his family that brought Zubair back from Egypt and eventually set him on the right path. It is that same

12

strength that will provide support to him when he is released from prison. As the Court can see from the letters by his family, they remained supportive and loving. They see in him the son, brother, friend they have always known and will provide encouragement and structure to his life when he is released. See letters, Ex. 1.

As to the nature of the offense, Zubair takes responsibility and has pled guilty to a serious crime. But it must be looked at through the prism of terrorism related cases in the United States in order to adequately discuss the nature and circumstances of the offense. This is not a "home grown terrorist" who planned harm on American soil or civilians anywhere. Zubair has been consistent through his recordings prior to his arrest and his meetings with the Government that he did not believe it was right to hurt anyone in the United States or to hurt civilians. He wanted to fight in the wars in Afghanistan and Iraq, which he felt were unjust. While Zubair was aware that would pit him against American soldiers, this is a far cry from recent arrests, grabbing the headlines and involving attempts to do harm in the United States.

Further, while Zubair traveled to Egypt, he did so without a plan and without any connections to any terrorist organizations. In what can best be described as a fool's errand, Zubair and his cousin embarked on a journey they believed was dictated by their religion. However, as soon as Zubair's father arrived, they quickly and voluntarily abandoned their trip and returned home. What followed were a few conversations with the Trainer, including those in which the Ahmed cousins essentially stalled the trainer, and Zubair's conversations with Mr. Haris Ahmed. Those conversations never amounted to making any real plans. In fact, Mr. Haris Ahmed badgered Zubair to travel to Georgia to make such plans and Zubair continuously avoided making any trip or commitment to travel. He was focused on his education, future career goals and starting a family.

13

> *ii. Need for Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, Protect the Public from Further Crimes, and Provide Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Even at 100 months, Zubair's sentence is a significant one. To a man his age, it is a large portion of the life he has already lived. He will essentially miss the period of his 30's. His risk of recidivism is low. It has already been many years since he traveled to Egypt and he has moved on with his life and career pursuits. He has repudiated the goals of that time and no longer poses a risk to society. Zubair is sure to take advantage of the time he spends in prison to further pursue his education. Since his initial arrest, he has spent some of the time working towards his MBA.

One hundred months is also enough time to reflect the seriousness of his offense, promote respect for the law, provide just punishment, and afford adequate deterrence. It is significantly longer than the average sentence in the United States, which is 4.87 years. Many of the individuals who contemplate crimes such as Zubair's are young. A sentence of 100 months is a significant amount of their life and will provide the same deterrent as the Government's requested sentence of 120 months.

> *iii. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct*

The only other defendant found guilty of similar conduct is Zubair's cousin. The only difference in their conduct is the slightly more involved role played by Zubair Ahmed. As discussed above, that difference is more than sufficiently accounted for in the differing ranges to which the two have plead. As for Zubair's original co-defendants, Messrs Mazloum, Amawi and El-Hindi, the differences are striking. First, of course, is the fact that Zubair has taken responsibility for his crime

14

and not put the Government or the Court through a lengthy trial.  Moreover, all were convicted by a jury of a much more serious charge that carried a potential life sentence.

Additionally, Zubair would point to the sentence of Mr. Mazloum in assessing this factor.  Although Mr. Mazloum's conviction was of a more serious crime, after trial and without cooperation of any kind, Zubair requests the same sentence.  A 100-month sentence is the only sentence that this Court can impose to avoid unwarranted sentence disparities.

    iv.  *Additional Factors*

Another consideration for this Court is Zubair's three years on pretrial release and his conduct during that time.  For three years Zubair has been subject to house arrest and electronic monitoring.  While this was at his request in lieu of being jailed during this time, it can be considered by the Court as part of Zubair's punishment for his crime.

However, during this time, Zubair has behaved exemplary.  There have been no incidents with regard to his electronic monitoring or reporting to his pretrial services officer.  Further, Zubair made several trips back and forth to Cleveland to meet with his attorneys, as well as two other trips at the request of the Government.  He has continued to follow all of the rules of his pretrial release and has been cooperative in every way.  This continued after his plea of guilty.  Knowing the lengthy sentence he would be facing, Zubair has continued to comply with all the requirements set by this Court.  Initially, he remained out on bond after his plea because of his desire to be married before he began serving his sentence and the lengthy delays with his fiancé's visa.  When it became clear that the process would continue to drag on, although permitted by this Court to remain free pending sentencing, he contacted the Court and asked if he could begin to serve whatever sentence this Court provides.  He has been in federal custody since January 14, 2010.

Support for a 100 month sentence comes from the Supreme Court's recent ruling in *Barber v. Thomas,* 2010 U.S. LEXIS 4717; 22 Fla. L. Weekly Fed. S 419. The Sentencing Commission relied on 15% good time credit in setting the ranges in the sentencing table. However, the Bureau of Prisons actually calculates only 12.8% good time credit. In formulating the Sentencing Table, the Commission adjusted the raw time in custody in view of the potential to receive good time credits. Recognizing that 54 is almost exactly 15% of 365, the Commission adjusted for good time credit "that would be earned under the guidelines" by adding 15% to the baseline. Prison time was increased by dividing by 0.85 good time when the term exceeded 12 months. This adjustment corrected for the good time (resulting in early release) that would be earned under the guidelines and made sentences in the Levels Table comparable with those in the guidelines (which refer to sentences prior to the awarding of good time). United States Sentencing Commission, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements*, 23 (1987) (emphasis added). JA-146. The Sentencing Table was calibrated assuming that the actual time served would be 85% of the sentence imposed. After *Barber,* it is clear that 15% is not the figure used by the BOP and this Court should consider this when imposing Zubair's sentence.

Another appropriate consideration for this Court is the overcrowding in America's prisons. Currently, the federal system is roughly at 135% of capacity. See *Bureau of Justice Statistics, Prisoners at Yearend 2009–Advance Counts*, attached hereto as Exhibit 2. The statistics contained in the report show that the federal prison population last year grew 3.4%, which are just over 6,800 additional prisoners. There are slightly more than 208,000 prisoners in federal facilities. As discussed above, Zubair's sentence of 100 months is more than adequate punishment and will

release him nearly two years earlier than the Government urges. This will clearly assist in the overcrowding issue in federal prisons.

### B. Supervised Release

The Plea Agreement specifically lays out the *maximum* supervised release and fine to which Zubair may be subject. Plea, p. 3. It clearly states that Zubair may be subject to a three-year term of supervised release once he has finished his prison sentence. The PSR recommends a term up to life but acknowledges that the Plea Agreement restricts it to a maximum of three years.

Zubair respectfully requests that this Court impose a two-year period of supervised release. As noted above, he was on pretrial release both before and after his plea and no concerns were raised by pretrial services. During his time, he has traveled, met with his lawyers, attended family functions and religious services, and regularly reported to pretrial services. His conduct since his arrest demonstrates that a two-year period of supervised release is adequate.

### C. Fine

As noted by the PSR, Zubair does not have the financial means to pay a fine in this case. PSR ¶ 130. He is currently heavily in debt, nearly $65,000, due to his educational loans. Zubair asks that this Court not impose a fine as part of his sentence but understands that he will be subject to a special assessment of $100.00.

**VII.     CONCLUSION**

For the majority of his life, Zubair Ahmed lived the life of a typical Muslim American teenager. The letters provided to the Court show him to be attentive to his family and active in his community. He had the normal interests of video games, bicycles, and school. As a young adult, Zubair engaged in behavior that was out of character for his gentle nature and devotion to his family. Zubair respectfully requests that this Court sentence him to a term of imprisonment of 100 months so that he may return to his family and future as a productive member of society.

Respectfully submitted,

FRIEDMAN & GILBERT

s/ Terry H. Gilbert
TERRY H. GILBERT (0021948)
ANDREA WHITAKER (0074461)
1370 Ontario Street, Suite 600
Cleveland, OH  44113
Telephone:     (216) 241-1430
Facsimile:      (216) 621-0427
E-Mail:          tgilbert@f-glaw.com
                     whitakerandrea@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that this 1st day of July, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Terry H. Gilbert
TERRY H. GILBERT (0021948)
